Zimmerman, J.
As stated by the commission, “these two pending matters involve an identical issue: ‘Shall a regular route motor carrier, operating over certain highways designated by the commission and between fixed termini, be authorized to have on file a tariff providing a joint rate with an irregular route motor carrier which operates to and from a fixed geographical base area?’ ”
There are essentially two matters for determination by this court: (1) Did the commission have the power and authority to entertain and reject the proposed joint rates? (2) If so, was the order of the commission in such respect unreasonable or unlawful?
As to the first question, the Public Utilities Commission of Ohio is an agency created by the General Assembly to supervise and regulate the activities of public utilities in this state. The general scope of the commission’s powers with respect to motor transportation companies is outlined in Section 4921.04, Revised *556 Code, and embraces supervision and regulation, the fixing and altering of rates, and the regulation of services to be performed.
Section 4921.03, Revised Code, outlines the general policy to be followed by the commission and states that transportation by common and contract carriers by motor vehicle shall be regulated “in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest.”
Other sections of the Revised Code detail the mode by which the commission shall proceed in establishing reasonable, just and fair rates with respect to motor and other carriers. For example, see Sections 4909.27 and 4921.23, Revised Code.
We are satisfied that the commission had jurisdiction by grant of the General Assembly to entertain the proceedings.
Was the rejection order issued by the commission unreasonable or unlawful? Under authority of what are now Sections 4921.03 and 4921.04 (G), Revised Code, the commission promulgated Administrative Orders Nos. 124 and 125, presently effective. The latter places limitations upon irregular-route certificated carriers by motor vehicle, prohibiting them from furnishing the same kind and character of service as that furnished by motor transportation companies operating between fixed termini, and provides that such irregular-route certificate holders shall be confined to casual trips between the same points and may not make trips between those points a regular operation.
In its opinion, the commission defines a “regular route carrier” as a motor transportation company operating its vehicles over specified routes between fixed termini and on a fixed schedule in conformity with the specifications of its certificate of public convenience and necessity, and an “irregular route carrier” is defined as a motor transportation company operating its vehicles on call over any route of its selection from or to a point or base territory as specified in its certificate of convenience and necessity. It will be observed that the operations of these two classes of carriers are quite different.
The commission then points out that by the approval of a *557 tariff permitting joint rates between a regular-ronte carrier and an irregular-route carrier, allowing tbe interchange of freight between them at any point or terminus of the regular-route carrier where the irregular-route carrier has base area authority, the result would be that the regular-route carrier would be able to reach and serve many points for which it has never shown the existence of a public need and as to which, even if there was a need, other existing carriers serving such territory would be adversely affected, with the denial to them of an opportunity to amplify and improve their service, resulting in a violation of the provisions of Section 4921.10, Eevised Code. The commission then asserts that it was never the intention of the General Assembly to allow a motor carrier, whether holding a regular-route or an irregular-route certificate, to extend its route, by the device of a joint rate arrangement, to reach any point in the state and, in so doing, arbitrarily enlarge its certificate of public convenience and necessity.
The commission concludes its opinion with the following words:
“In the view of the commission, the proposals here made, if allowed to go into effect, would completely disrupt the system of regulation which has been functioning for many years, and under which the motor carriers of this state have developed their service and facilities in competitive balance. Therefore, the commission concludes that, whether predicated on the clear sense of the statutes, as they necessarily operate in practice, or whether predicated on Section 4921.03 of the Eevised Code which directs the commission to foster sound policies in transportation in general terms, the joint rates here proposed should not be permitted to go into effect.”
It is our conclusion that the order of the commission herein is based upon tenable and persuasive considerations, and that it may not be denoted as unreasonable or unlawful. The commission has the function of supervising and regulating motor transportation companies under the authority conferred upon it by the General Assembly, and we think that it has performed that function here within permissible limits. Of course, this court will not substitute its judgment for that of the commission in matters over which the commission has authority and *558 control. Neither do we find any elements of unconstitutionality in the commission’s order.
That order is, therefore, affirmed.

Order affirmed.

Taft, C. J., Matthias, Griffith, Herbert and Fess, JJ., concur.
Fess, J., of the Sixth Appellate District, sitting by designation in the place and stead of Gibson, J.